PINE BLUFF LODGE OF ELKS NO. 149 *v.* SANDERS.

Opinion delivered May 18, 1908.

1. MECHANICS' LIEN—ESTOPPEL TO ASSERT LIEN.—Where a building contractor gave bond signed by a guaranty company to secure the performance of his contract, and then gave the guaranty company an indemnifying bond to save it harmless from liability on the firstmentioned bond, and the owner subsequently released the guaranty

company, sureties on the indemnifying bond who furnished materials to the contractor will not be estopped to assert a lien on the building for such materials.   (Page 297.)

2.   SAME.—One who furnished materials for erecting a building for a Lodge of Elks will not be estopped from claiming a lien therefor because he was treasurer of the building committee of the Lodge, whose duty it was to pay the drafts or checks drawn by the chairman and secretary of the committee in favor of the contractor, materialmen and laborers as they were presented to him.   (Page 297.)

3.   SAME—CONTRACTOR'S BOND—RIGHT OF ACTION.—Where a building contractor executed a bond with surety to save the owner harmless from any pecuniary loss resulting from the breach of the contract on the part of the contractor, such bond was not intended to protect those who furnished material for the building.   (Page 298.)

4.   SAME—EFFECT OF ABANDONMENT BY CONTRACTOR.—Where a contractor abandoned his undertaking after partially performing his work, and the owner, in completing the work as originally designed, is obliged to incur expenses in excess of the contract price, he should be allowed credit, in a settlement with the lien holders claiming under the contractor, for such sums as he paid out independently of the contractor's debts; and when the aggregate of these sums has been deducted from the contract price, the residue should be prorated among such lien holders.   *Long* v. *Chas. T. Abeles & Co.,* 77 Ark. 156, followed.   (Page 299.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed.

### STATEMENT BY THE COURT.

In 1902 Pine Bluff Lodge No. 149, Benevolent and Protective Order of Elks of the United States of America, and its trustees, F. C. Bridges, William D. Jones, Ben J. Altheimer, J. B. Trulock, E. C. Howell, and W. D. Hearn, were the owners of a parcel of land in the old town of Pine Bluff, Arkansas, and on May the 8th, that year, said Elks Lodge let a contract to W. Fleet Jones to build for it on said land a brick building to be called the Elks Home and Opera House. The contract price was $23,895.

Jones gave a bond to the Elks Lodge for the faithful performance of his contract with the United States Fidelity & Guaranty Company as surety thereon, and he also gave a bond of indemnity to the United States Fidelity & Guaranty Company with J. W. Sanders, L. L. Campbell and others as sureties

thereon to hold said Guaranty Company harmless as surety on the Elks Lodge bond. Jones then made a sub-contract with Weaver & Mitchell to furnish the material and do the brick work on the building, and Weaver & Mitchell made a contract with the Pine Bluff Brick Company to purchase from it all the common brick needed in the erection of the building. Weaver & Mitchell also made a contract with W. H. Westbrook, composing the firm of the Westbrook Grain & Commission Company, to furnish them lime, cement and other material for the building. The contractor, Jones, made contracts with J. W. Sanders, L. L. Campbell, McGaughy Hardware Company, Dilley Foundry, W. H. Westbrook, and Marsh & Riley to furnish him material for the building.

Under his contract Jones was to be paid eighty-five per cent. of the value of material and work put into the building from time to time as the work progressed, on the estimates of the superintendent. The Elks Lodge made payments to him from time to time on this basis. Under the contract the building was to be completed on or before October the 20th, 1902. It was not completed at that date, but the work was progressing and nearing completion, and Jones and the sub-contractors continued to work on the building till November 1, 1902, and on that day the superintendent gave Jones an estimate showing him to be entitled under the contract to a payment of $365.15. The Elks Lodge refused to pay the estimate to Jones, and on November 4th, Jones notified the building committee of the Elks Lodge that, because of the refusal to pay the amount due him on the estimate, his labor had become disorganized, and he would be unable to complete the contract. After this notice was received, the building committee of the Elks Lodge took charge of the building, used such of the material as Jones had on hand as suited them, and completed the building, not strictly according to the plans and specifications under which Jones was working, but making a few changes. They employed a new superintendent, bought other material, employed labor and finished the building, paying for all material and labor purchased and used by them after that date, but refusing to pay anything whatever on the balances due those companies and persons who had furnished material to Jones and his sub-contractors for use

in the building. Balances were due each material man and company above mentioned, and they gave their several notices that they would file liens upon the property, and pursuant to the notices they filed their accounts, duly verified and describing the property, within ninety days after the material had been furnished, and each of them brought suit against the Elks Lodge and its trustees to enforce their respective liens against the property. These suits were all brought within three months after the liens were filed, and later they were all consolidated into the one case at bar.

The remaining facts are sufficiently stated in the opinion.

There was a decree in favor of the plaintiffs, and defendant has appealed.

*W. F. Coleman* and *Bridges & Wooldridge,* for appellants.

1. Under the recent decisions of this court (77 Ark. 156 and *Central Lumber Co.* v. *Braddock,* 84 Ark. 560), and the interpretation of our statute (71 Ark. 35), plaintiffs are not entitled to recover anything.

2. The Brick Company failed to preserve its lien. 51 Ark. 316. Its lien not filed in ninety days. 20 Am. & Eng. Enc. Law, 361-402; 27 Cyc. 144.

3. Sanders and Campbell waived their right to claim liens by signing the bond to protect the lodge against loss, etc. 79 Pac. 485; Boisot on Mech. Liens, § 753; Phillips on Mech. Liens, § 43a. Sanders is also estopped by his other conduct as treasurer and member of the building committee. 160 U. S. 430; Jones on Liens, § 1293; 71 Iowa, 347; 1 E. D. Smith (N. Y.), 625; Boisot on Mech. Liens, § 718. Silence is acquiescence, and works an estoppel. Cases *supra;* Herman on Estoppel, § 1061.

4. The contract price should be distributed among laborers and sub-contractors when insufficient to pay all. 77 Ark. 156; Boisot on Mech. Liens, § 228, 231; 77 Ark. 160.

5. Where the bond provides for completion of building and delivery free from liens and not for payment of claims of sub-contractors, the latter have no rights under it. 20 Am. & Eng. Enc. Law, 493; 5 Wash. 496; 27 Cyc. 315.

6. All claims and setoffs should be deducted from the original contract price in arriving at the amount to be distributed

to the lien-holders. Phillips on Mech. Liens (3 Ed.), § 292, 114, 115; 27 Cyc. 333; Jones on Liens, § 1599; 65 N. Y. 292. Sub-contractors must take notice of all the terms of the original contract, and be governed thereby. Phillips, Mech. Liens, 62; Boisot, Mech. Liens, § 228; 27 Cyc. 93.

*J. W. Crawford, W. T. Young* and *White & Altheimer,* for appellee.

1. The testimony clearly shows that the Pine Bluff Brick Company filed its account and affidavit within ninety days after the last item of 7000 bricks were delivered on October 24th, while Jones was still at work.

2. Sanders and Campbell did not waive their rights because of indemnifying the surety company. 20 Am. & Eng. Enc. of Law (2 Ed.), 490. The lien is created by the statute. Kirby's Digest, § 4970. Even if they had made a direct contract with appellant, conditioned for the compliance by Jones, the contractor, with the terms of the contract, the rule of estoppel invoked would not be a proper defense, but the defense would be in the nature of counterclaim or set-off. 56 Mo. 487; 28 Mo. App. 540; 38 Pac. (Cal.), 639.

3. Sanders is not estopped because he was treasurer of the building committee and paid the drafts drawn on him in favor of the contractor. Estoppel in pais is based on fraud or culpable negligence, and no fraud, concealment, misrepresentation or carelessness is either alleged or proved. 53 Ark. 200; 36 Ark. 114; Bigelow on Estoppel (4 Ed.), 552 Bispham's Principles of Eq. 408-9; 56 Ark. 380; 82 Wis. 338; 67 Ill. 463; 28 Ky. L. Rep. 203; 27 Cyc. 276; 1 Am. & Eng. Enc. of Law (2 Ed.), 1070, 1074, 1081.

4. It was proper to deduct the amount collected by appellants from the Guaranty Company from the amount they had to pay out to complete the building. The Guaranty Company only did what Jones agreed to do, and what it had been paid by him to do in the event of his failure.

The contract price, less the amount paid by the owner independent of the contract to complete the building, is the sum the material man can look to for payment. 77 Ark. 160; 105 S. W. (Ark.), 583; Kirby's Digest, § 4975. Hence the claim that the $4,000 liquidated damages for failure to complete the

building within the specified time should be deducted from the contract price in fixing the *pro rata,* is untenable. The law is liberally construed in favor of the material man. 30 Ark. 568; 49 Ark. 478.

5. Appellees should have had decrees against the property for the full amount of their balances, because none of the contract price was retained by appellant until the completion of the building. Kirby's Digest, § 4975, *proviso.* That proviso is imperative, and, being a statute, is part of the contract. And appellants can not complain if they have made a contract prejudicial to their own interest, in case sub-contractors are left unpaid. 15 C. C. A. 281.

6. If it be held that only eighty-one per cent. of the claims is recoverable, then the chancellor erred in deducting the amounts paid to appellees by Jones from the amounts so found due; 15 C. C. A. 273; 68 Fed. 90; 8 C. C. A. 159; 3 Pomeroy's Eq. Jur. 1414; Story, Eq. Jur. 564b.

Hart, J., (after stating the facts.) Appellant contends that the Pine Bluff Brick Company failed to file a statement of its account with the clerk in due time as required by law, and for this reason failed to preserve its lien. It bases its contention on the alleged fact that the last item on the account and the one that brings the account within the statutory period was furnished directly to appellant after the contractor had abandoned the work, and after it had assumed charge of the construction of the building. The item referred to was for 7,000 bricks, and its date is October 24, 1902. The abstract of tickets exhibited at the trial in the court below shows that 7,000 bricks were furnished by the Pine Bluff Brick Company to be used in the construction of the building, and that the date of delivery was October 24, 1902. The undisputed testimony shows that the contractor had charge of the work on that date, and that he did not abandon it until the 2d day of November following, when he turned it over to appellant for completion. The account of the Brick Company, duly verified, was filed in the clerk's office on the 20th day of December, 1902, less than sixty days after the last item of the account was furnished. Hence we are of the opinion that the finding of the chancellor in that regard is correct, and should be sustained.

2. It is urged by appellant that, because Sanders and Campbell were sureties on a bond given by Jones, the principal contractor to his surety, the United States Fidelity & Guaranty Company, to indemnify it from loss by reason of having become surety on his contractor's bond, they are estopped to assert a lien for materials furnished for the construction of the building in question.

The Guaranty Company became the surety of Jones, the principal contractor, to save appellant harmless from any loss it might sustain by reason of a breach of their contract by him. Before these lien claimants had filed their suits, appellant had made a settlement with the Guaranty Company, by which it had been released from further liability on the bond. There was no privity of contract between appellant and Sanders and Campbell. The latter did not execute a bond to secure the payment of whatever debt the Guaranty Company or its principal on the bond might owe to appellant, but executed a bond merely to indemnify the Guaranty Company against liability by reason of it having become the surety on Jones's bond as contractor. In such a case no equity could arise in favor of appellant, except through the insolvency of the Guaranty Company, and this contingency could never affect appellant, for the reason that it had already settled with it and could thereafter have no claim against it or its indemnitors. *Dyer* v. *Jacoway*, 76 Ark. 176. For this reason no estoppel could arise, and the finding of the chancellor in that regard was correct, and should be sustained.

3. Counsel for appellants say that Sanders is estopped now from claiming a lien for materials furnished because he was treasurer of the building committee of appellant. All the members of the building committee served as such without pay, and the duty of the treasurer was to pay the drafts or checks drawn by the chairman and secretary of the committee in favor of the contractor, materialmen and laborers as they were presented to him. The other members of the committee knew that Sanders was furnishing materials to be used in the construction of the building, and that he had not been paid therefor. They knew that the principal contractor had given bond for the faithful performance of his contract.

In the case of *Simonson* v. *Stachlewicz,* 82 Wis. 339, the court held:

"Statements made to the owner of a building or to his architect by subcontractors to the effect that the principal contractors were perfectly good and had always paid their bills cannot estop such subcontractors from asserting their lien on the building for materials furnished, although after such statements the owner had paid the principal contractors, if he was not misled by the statements or induced thereby to make such payment."

The record does not disclose any facts tending to show that the delay of Sanders in asserting his lien worked to the prejudice of appellants, or that it was misled thereby. He certainly did nothing to warrant a belief that he waived his lien, or that he did not expect to protect himself in due time by such remedies as the law affords.

The chancellor found that appellant was not misled by his acts and conduct, and we are of the opinion that his finding in that regard was correct, and that Sanders is not estopped from asserting his lien by reason of having been a member of the building committee.

4. After the principal contractor made default, the appellant took up the work of the construction of the building and finished it. There were some changes in the plans, but they were not material. The building was constructed substantially according to the original plans and specifications. After the completion of the building, appellant sued Jones, the principal contractor, and obtained judgment against him for $1,403.69 as damages, on account of the money it had paid out to complete the building in excess of the contract price, and also for $4,000 liquidated damages as provided in the contract on account of the delay in the completion of the building.

In consideration of $2,928.24 paid to it by the Guaranty Company, appellant released it from all liability by reason of being surety on the contractor's bond, and accepted the said amount in full satisfaction of the judgment against the principal contractor, in so far as the Guaranty Company was concerned.

The chancellor charged appellant with the amount collected from the Guaranty Company as surety of the principal contractor. This was in effect to hold that appellant took the bond for the benefit of the sub-contractors, and not as a protection

to itself, and was error. The bond in this case was not made for the benefit of the sub-contractors. Appellant was the sole obligee in the bond. Its condition is as follows: "Now, therefore, the condition of the foregoing obligation is such that the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal to be performed, then this obligation to be void."

In the case of the *M. T. Jones Lumber Co.* v. *Villegas,* (Tex.), 28 S. W. 558, the court said: "The bond given to the owner by the contractor could not possibly inure to the benefit of the materialmen. There was no privity of contract between appellant (materialman) and the bondsmen on the contractor's bond, and no cause of action existed in favor of appellant as to them."

The bond in the present case was not given to secure the payment of material furnished to the contractor to be used in the construction of the building, but was given to indemnify and save harmless appellant from any breach of the contract on the part of the principal contractor. It was in no wise intended to benefit or to protect the materialmen, and no right of action thereon exists in their favor.

In the case of *Long* v. *Chas. T. Abeles & Company,* 77 Ark. 157, it was held that "where a contractor abandoned his undertaking after partially performing his work, and the owner, in completing the work as originally designed, is obliged to incur expenses in excess of the contract price, he should be allowed credit, in a settlement with the lien-holders claiming under the contractor, for such sums as he paid out independently of the contractor's debts; and when the aggregate of these sums has been deducted from the contract price, the residue should be prorated among such lien-holders."

The amount to be distributed to the lien claimants will be fixed by deducting from the contract price as expressed in the contract the amount paid out by the Lodge to complete the building after the contractor had abandoned the work, and each lien-claimant is entitled to recover what he lacked, if any, of receiving his proportionate part.

For the error indicated, the cause is reversed and remanded with directions to enter a decree in accordance with this opinion.

HILL, C. J., not participating.