EMPLOYERS' LIABILITY ASSURANCE CORP.
*v.* A. W. JOHNSON CO.

5-2537                                           354 S. W. 2d 733

Opinion delivered March 12, 1962.

*Fulk, Lofton, Wood, Lovett & Parham,* for appellant.

*Mehaffy, Smith & Williams* and *R. Ben Allen,* for appellee.

Ed. F. McFaddin, Associate Justice. The question posed is whether the appellee was entitled to judgment on the indemnity bond signed by appellant. In January 1955, Kelly Engineering Company (hereinafter called "Kelly"), entered into a contract with Flake, et al. (hereinafter called "Wallace"), by the terms of which contract Kelly agreed to furnish the materials and labor to completely air-condition the Wallace Building in Little Rock. The contract between Kelly and Wallace contained two paragraphs here germane. They are:

"Art. 21. *Bond.* The contractor shall, at owner's expense, provide a bond, in the amount of $100,000.00 with an approved Surety Company as surety, to the approval of the Owner, for the faithful performance of the contract, and also for the use and benefit of all parties who may become entitled to liens, under said contract. This Bond shall remain in force for and until one (1) year after the completion of the work, and acceptance of same by the Engineer and Owner. This bond shall also cover the payment to the Owner of any damage on account of failure of the Contractor to complete the work at the time specified in the agreement. * * *

"Art. 26. *Guarantees.* Before signing contract owner shall require Contractor to furnish bond satisfactory to Owner and covering the latter's faithful performance of the contract and the payment of all debts and obligations resting upon Contractor thereunder."

Kelly tendered to Wallace, who accepted it, the bond hereinafter copied, signed by appellant, Employers' Liability Assurance Corporation, Ltd. (hereinafter called "Insurance Company"). Appellee, A. W. Johnson Company (hereinafter called "Johnson"), furnished materials and supplies to Kelly which were used in air-conditioning the Wallace Building; and when Kelly failed to pay in full for such items, Johnson instituted the present action, on the bond, against the Insurance Company, as sole defendant, for the amount due by Kelly to Johnson.

The Insurance Company denied liability. Trial to the Circuit Judge without a jury resulted in judgment for Johnson and this appeal ensued in which are presented, *inter alia,* the matters now discussed.

I. *Provisions Of The Bond.* The first and vital matter is the wording of the bond which the Insurance Company signed and on which Johnson sought to recover. Omitting only signatures, it reads:

"Know all Men by these Presents:

"That we KELLY ENGINEERING SERVICE, a partnership composed of E. W. Kelly and Bill Kelly, 922 Main Street, Little Rock, Arkansas, of Little Rock, Arkansas (sic) (hereinafter called the Principal), as Principal, and THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, with its chief office in the City of Boston, Massachusetts (hereinafter called the Surety), as surety, are held and firmly bound unto LEON FLAKE, OSCAR F. KOCHTITZKY, JR. and MARTHA LOUISE KEATON of Exchange Building, Little Rock, Arkansas (hereinafter called the Obligee) in the penal sum of - One Hundred Thousand and no/100 - Dollars ($100,000.00) (which sum is hereby agreed to be the maximum liability hereunder), lawful money of the United States of America, well and truly to be paid, and for the payment of which we and each of us hereby bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"Whereas, said Principal has entered into a certain contract in writing, bearing date January 17, 1955, with the said Obligee for the furnishing and installation of air conditioning system in the Wallace Building, 105 Main Street, Little Rock, Arkansas, in accordance with plans and specifications prepared by Pettit & Pettit, Engineers, Little Rock, Arkansas, a copy of which is or may be attached hereto, and is hereby referred to and made a part hereof.

"Now, Therefore, the condition of this instrument is such that if the Principal indemnifies the Obligee against loss or damage directly arising by reason of the failure of the Principal faithfully to perform the above mentioned contract, then this instrument shall be null and void; otherwise it shall remain in full force and effect.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and affixed their seals at Little Rock, Arkansas this 18th day of January 1955."

We point out the great difference between the provisions of the contract and the provisions of the bond. The contract provided in Article 21 that Kelly would make a bond "for the faithful performance of the contract, and also for the use and benefit of all parties who may become entitled to liens, under said contract." If the Insurance Company had signed a bond with such provisions in it (*i. e.*, for performance and third party beneficiaries), like the contract stated, then clearly Johnson could have maintained an action on the said bond under such cases as *Trinity Universal Ins. Co.* v. *Willbanks,* 201 Ark. 386, 144 S. W. 2d 1092; *H. B. Deal & Co.* v. *Marlin,* 209 Ark. 967, 193 S. W. 2d 315; and *H. B. Deal & Co.* v. *Bolding,* 225 Ark. 579, 283 S. W. 2d 855.

The bond signed by the Insurance Company in this case is not a *performance bond* as in the cases last cited above: instead, it is a *mere indemnity bond* saying that the surety shall indemnify "the Obligee against loss or damage directly arising by reason of the failure of the Principal faithfully to perform the above mentioned contract." The distinction between a performance bond and an indemnity bond is well recognized. In 9 Am. Jur. 64, "Building and Construction Contracts" § 98, the holdings are summarized in this language:

"No right of action exists in favor of a materialman or laborer against the surety on a private contractor's bond conditioned merely to indemnify and save harmless the owner from any pecuniary loss resulting from the

breach of any of the terms of the contract between the contractor and the owner, since such bond is not intended for the benefit or protection of the third parties, but merely to indemnify the owner.''

In *Pine Bluff Lodge* v. *Sanders,* 86 Ark. 291, 111 S. W. 255, we recognized this well known distinction between performance bonds and indemnity bonds in this language:

''The bond in the present case was not given to secure the payment of material furnished to the contractor to be used in the construction of the building, but was given to indemnify and save harmless appellant from any breach of the contract on the part of the principal contractor. It was in no wise intended to benefit or to protect the materialmen, and no right of action thereon exists in their favor.''[1]

Appellee argues that the bond signed by the Insurance Company incorporated the contract by reference. That contention is true. But such incorporation did not bind the Insurance Company beyond the terms of its signed agreement, because incorporating the contract by reference is one thing and agreeing to guarantee the performance of the contract is quite another; and this bond did not guarantee the performance of the contract. Further, we point out that this was a *private bond,* as distinguished from a *statutory bond.* Our cases hold that when a bond is given under the statute, all of the provisions of the statute are incorporated in the bond. *New Amsterdam Cas. Co.* v. *Detroit F. & S. Co.,* 187 Ark. 97, 58 S. W. 2d 418; *Union Indemnity Co.* v. *Forgey & Hanson,* 174 Ark. 1110, 298 S. W. 1032. A private bond of indemnity—as distinguished from a performance bond—however, does not extend beyond its own terms. In 9 Am. Jur. 58, ''Building and Construction Contracts'' § 89, the holdings are summarized:

---

[1] There is an exhaustive annotation in 77 A.L.R. 21 (supplemented in 118 A.L.R. 57), entitled, ''Right of person furnishing material or labor to maintain action on contractor's bond to owner or public body, or on owner's bond to mortgagee.'' In discussing private bonds conditioned to indemnify the owner (on page 65 of the annotation) our own case of *Pine Bluff Lodge* v. *Sanders, supra,* is cited as the leading case.

"The bond should be construed in connection with, and in the light of, the contract in connection with which it was executed or the performance of which it secures. In case of conflict, however, the terms of the bond are controlling over those of the contract in determining the surety's liability."

See also 42 C. J. S. 566 and 576 "Indemnity" § 3 and § 8. In this case of a private bond of indemnity, the surety had a right to give such bond as it pleased and to limit its liability in any manner it saw fit. Therefore, under the evidence here presented, Johnson did not have a cause of action against the Insurance Company on the bond.

II. *Estoppel.* The evidence here shows that in December, 1955, while Kelly was in default, Johnson had a meeting with the Claims Superintendent of the Insurance Company, who advised Johnson (according to his testimony) that there was no need for Johnson to file a lien and that the Insurance Company was liable for labor and materials under the bond and, further, that Johnson would have "a year after the job was completed to file suit." It was shown that after this assurance Johnson continued to furnish further supplies, some of which are included in the amounts here sued on. The Circuit Court judgment in favor of Johnson might be affirmed on the theory of estoppel, except for the fact that Johnson not only failed to plead estoppel but further expressly waived it in this language: ". . . this is our approach—not estoppel, but on the theory that the terms of the Contract and the Bond are ambiguous and this is oral testimony introduced for the purpose of explaining the terms of the Bond and Contract." The foregoing statement was made when A. W. Johnson was testifying and constitutes an express disaffirmance of any theory of estoppel. So the Circuit Court judgment cannot be affirmed on any theory of estoppel.

III. *Directions On Remand.* Since we have concluded that Johnson does not have a direct cause of

action against the Insurance Company on the bond under the facts here presented, it follows that the judgment of the Circuit Court in favor of Johnson must be reversed. But there are statements in the record that cause us to remand the case for further proceedings not inconsistent with this opinion. It is stated that Johnson has pending a suit in equity against Wallace, the exact nature of which is not clearly disclosed. The outcome of that suit may have a direct bearing on the liability, if any, of the Insurance Company. Furthermore, additional matters may arise on a new trial. Therefore, the judgment is reversed and the cause remanded.

JOHNSON, J., dissents.