Milwaukee County, Plaintiff and Respondent, vs. H. Neidner & Company, Defendant and Respondent: Columbia Casualty Company and another, Defendants and Appellants.

*October 8, 1935—February 4, 1936.*

186

For the appellant M. M. Schranz Roofing & Building Supply Company there were briefs by *Tibbs & Tibbs* of Milwaukee, and oral argument by *Brooke Tibbs* and *W. L. Tibbs.*

For the appellant Columbia Casualty Company there were briefs by *Drought & Drought* of Milwaukee, and oral argument by *Ralph M. Drought.*

For the respondent Milwaukee County there was a brief by *William A. Zabel,* district attorney, *O. L. O'Boyle,* corporation counsel, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Perry.*

For the respondent H. Neidner & Company there was a brief by *Rubin & Zabel,* attorneys, and *W. C. Zabel* of counsel, all of Milwaukee, and oral argument by *W. C. Zabel* and *John Winfred Zabel* of Milwaukee.

The following opinion was filed November 5, 1935:

FOWLER, J. The appellant Schranz Company, hereinafter referred to as the appellant, contends that the court erred to its prejudice: (1) In permitting H. Neidner & Company to

amend its complaint at the close of the testimony; (2) in finding that the tiling buckled and cracked because the waterproofing did not bind the tiling to the shower walls; (3) in finding that the want of a binding of the tiling to the walls was due to lack of workmanship; (4) in assessing as damages cost of replacement not guaranteed by the construction contract; (5) in including in the damages awarded interest on the cost of replacement; (6) in entering judgment for the surety company against the Schranz Company; (7) in misapplying the doctrine of subrogation; (8) in refusing to receive testimony offered by the defendants; (9) in receiving evidence produced by the plaintiff; (10) in allowing judgment to the original defendants against the Schranz Company on payment of the judgment against them; (11) in not giving the interpleaded defendant a fair trial.

The appellant surety company contends that the court erred in awarding judgment against it because: (12) The action was not commenced within one year after completion of the work; (13) the surety was liable only in case the work did not stand up for one year; (14) the evidence conclusively shows that the buckling and cracking of the tile was caused by defective plans; (15) the plaintiff waived defects of workmanship and is estopped from claiming damages therefor; (16) no damages were proven.

(1) The claims here are that because faulty workmanship was not an issue under the pleadings between H. Neidner & Company and the appellant when the trial began, the defendant had not prepared for trial on that issue and had no opportunity to do so, and that this not being an issue when the trial began, the appellant has had no jury trial upon that issue, as was its right, and its consent to trial without a jury was only a consent to trial of such issues as existed at the time the consent was given. But that issue was raised by the amendment of the plaintiff's complaint, which was served on the appel-

lant and the appellant served and filed an answer to it over six weeks prior to the commencement of the trial. It thus had ample notice that this issue was involved and would be tried, and it had accepted the defense of the plaintiff's cause of action. While the original cause of action stated did not raise the issue of defective workmanship in installing the waterproofing, the amended complaint did raise it, and the appellant by its answer to the amended complaint assumed the defense of that issue. It went to trial knowing that that issue would be raised by the plaintiff upon the trial and made no objection to H. Neidner & Company that it would not defend that issue because it was not raised by its cross complaint. The evidence upon that issue was not objected to by the appellant, except that it objected to the introduction of any evidence by the plaintiff as against it. The introduction of this evidence began early in the trial, and the witness who testified first early in his testimony testified as to how the asphalt was applied on the walls—that it was applied too cold and not evenly swabbed so that some portions of the wall had no asphalt at all upon them, and that the workman did not sufficiently "pat" or press the membrane into the asphalt upon the wall or the asphalt was so cold that the membrane did not penetrate into and stick onto the asphalt. The counsel of appellant cross-examined the witness and all other witnesses of the plaintiff. When the defense started, after plaintiff's case was in, counsel examined the witnesses. Early in the defense counsel for the appellant went into the way in which the waterproofing was done, and attempted to show that it was done according to the plans and specifications and applied correctly. He also attempted to show that the waterproofing had no structural strength whatever and that the cause of the buckling of the tiling was that the concrete plaster between the waterproofing and the tile was too thick, and that asphalt is not adhesive enough to help support the tiling.

This was followed by testimony of other witnesses of like nature. The contention that the defense was not advised of the claim of the plaintiff that faulty workmanship caused the damage complained of and was prejudiced by the fact that the cross complaint originally served did not state the double aspect of the plaintiff's claim, or by the fact that the court allowed amendment of it at close of the trial to allege the double aspect, is without merit. The amendment was in accordance with the proofs and in accordance with the claim of the plaintiff made by its amended complaint. Had H. Neidner & Company amended its cross complaint immediately upon service of the amended complaint, the appellant would have been in no different position or better position to defend. As to a jury trial, it waived a jury trial with full knowledge of the double aspect of the plaintiff's amended complaint, accepted the challenge of the plaintiff by answering it and proceeding to conduct the defense without withdrawing its acceptance or tendering it back to H. Neidner & Company.

The appellant argues that it made no objection to being interpleaded because the only ground of interpleader laid was that the buckling of the walls resulted from a substitution of other waterproofing for "Minwax," and that had the claim of defective workmanship been at first interposed it would have objected. To this it is sufficient to say that its objection would no doubt have been futile. The case was a proper one for interpleading because H. Neidner & Company on judgment going against it on the ground of improper workmanship of the appellant would have an action over against it. Sec. 260.19 (3), Stats. It will not be presumed that the court would have refused to interplead the appellant when the result of the refusal would have been two long trials where one would answer every purpose of the two.

(2), (3), (14) The trial judge in a written decision stated that the claim was made in defense that the plans and specifications for the installation of the tiling were defective, and

that installation in accordance with them caused the cracking and bulging, but that this question was comprised in the one as to defective installation of the waterproofing, and that he was "obliged to hold that the plans and specifications for installing the waterproofing were not a factor" in the collapse of the tiling, and that the real cause was the "workmanship and manner of the application of the asphaltic compound and fabric." He states that this was "quite apparent to the eye of the layman" and was "strengthened to almost a certainty by the testimony of numerous experts who had investigated the existing walls and by exhibits" mentioned. The appellant claimed that it was no function of the waterproofing to bind the tiling to the walls, but there was ample evidence to support the trial judge's conclusion that the lack of a bond between the waterproofing fabric and the walls was due "either to the first mopping of the asphaltic compound being at too low a temperature, or because of careless mopping, described best as 'sloppy workmanship,' or both." It is apparent from his written decision that the trial judge gave careful consideration to the matter, and we cannot say that his conclusions of fact were not supported by the evidence.

(4), (16) Neither the appellant nor the surety company saw fit to contradict the testimony of the plaintiff as to cost of replacement, which was given by Mr. Neidner of H. Neidner & Company, whose testimony was that he would replace the tiling with "Minwax" waterproofing for the amount found by the court as the cost of replacement, but would not guarantee it to stand for two years. The appellant seems to urge that no damages can be awarded because there is no evidence as to what the replacement would cost if the replaced work was guaranteed for two years. Manifestly, the cost with a guaranty would be no less than without one. The award is therefore not too high, and the appellants are not prejudiced because the damages are not based on cost of replacement with a guaranty. The surety company presents nothing in support of its assignment in regard to damages.

(5) The damages awarded consisted of the cost of replacement as found by the court with interest from February 10, 1932, when demand was made upon H. Neidner & Company to replace the tiling. The appellant claims that interest is not allowable on claims for unliquidated damages, and that the plaintiff's claim is of that nature. Appellant is correct as to the general rule. 8 R. C. L. p. 533.

The respondent contends that its claim was for cost of materials of various kinds and the labor involved in the replacement; that this cost was easily ascertainable when the demand was made; and that claims of this nature are considered liquidated and interest is allowable thereon from the time of demand. *Laycock v. Parker,* 103 Wis. 161, 186, 79 N. W. 327, 335, is cited in support of this contention. After pointing out the conflict in the prior decisions of this court, saying that "the great weight of authority is in favor of a rule substantially such as that adopted in New York," that "if there be a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes, he should . . . be held responsible for making such application correctly and liable for interest if he does not," and that "the New York courts have adopted as designation of such standard 'market value,' " the opinion in the *Laycock Case, supra,* states: "If one having a commodity to purchase or certain services to hire can by inquiry among those familiar with the subject learn approximately the current prices which he would have to pay therefor, a market value may be said to exist." The case was one for damages for breach of a contract for construction of a building. Interest was allowed therein from the time of demand for the cost of items for material and labor. That case has been cited as stating the correct rule as to interest in instances too numerous to mention. See Shepard's Wisconsin Citations, p. 216, and Suppl. p. 38. It has been followed in allowing interest upon a claim for cost of reconstruction under a building contract involving material and labor in *Buchholz v.*

*Rosenberg,* 163 Wis. 312, 156 N. W. 946, and upon a claim for loss by fire of a building in *Necedah Mfg. Corp. v. Juneau County,* 206 Wis. 316, 237 N. W. 277, 281, 240 N. W. 405. In the case last cited the rule of the *Laycock Case* is restated and approved as "sound," and the comment is made that "there is now no occasion for again reviewing decisions antedating that case." The allowance of interest in the instant case was proper.

(6), (7), (10) The appellant contends that the court erred as to the form of its judgment and misapplied the doctrine of subrogation. The language of the judgment is that the plaintiff recover from H. Neidner & Company, and that on payment of the judgment by H. Neidner & Company or the surety company, H. Neidner & Company or the surety company shall recover from the Schranz Company by subrogation the amount of the judgment so paid. It is true that the basis of recovery by H. Neidner & Company against the appellant is not the doctrine of subrogation, but breach by the appellant of its contract with H. Neidner & Company, and that the doctrine of subrogation has no application as between these two. But on payment of plaintiff's judgment by the surety company, the surety company will be subrogated to the right of H. Neidner & Company and the term "subrogation" is properly used as applied to the surety company. Any inaccuracy in the form of the judgment in this respect is immaterial and not prejudicial to the appellant. The intent of the interpleader statute is that all controversies connected with the subject of the main action shall be determined by one trial and one judgment, and the trial and judgment involved are in accordance with that intent. Sec. 260.19 (4), Stats.

(8) The claims of error in rejection of evidence will be treated under the following subheads (a) to (d).

(a) A month after the testimony was closed and the case was submitted to the court and taken under advisement, the appellant moved the court to open the case for further testi-

mony to permit it to show the result of an experiment it had recently made, which it claimed showed that the waterproofing would not provide a bond between the wall and the fabric, and that the cause of the buckling of the tile was therefore not faulty workmanship in applying the waterproofing but faulty specifications of construction. A week before the motion was made, the appellant had affixed two tiles, one above the other, to the middle portion of an upright panel sixteen inches by eight and a half inches in size and similar to a section of the stall walls to which the waterproofing had been applied in the showers, with waterproofing such as was used in the showers, applying it properly. After standing a week, the tiles still adhered to the panel, but their weight had caused them to drop three eighths of an inch. Similar attachment had been made of two separate bricks, both of which had fallen from the upright panel to the floor. The court denied the application. It is claimed this denial was an abuse of discretion and as such an error entitling the appellant to a new trial.

The trial judge had at the time the motion was presented to him thoroughly considered the evidence presented on the trial and had carefully prepared a written decision fully covering the issues. He doubtless considered that were the case opened for further testimony as to the matters shown by the affidavits, and such testimony given, it would not change his conclusions of fact. The proffered evidence, while different in kind from that introduced by the appellant in support of its claim that the buckling was due to an improper plan of construction, was only cumulative in its effect. There was ample time after the plaintiff's amended complaint was served to make such experiments as it desired prior to and present evidence thereof at the trial. The situation is one that frequently occurs where counsel can see after a trial that they have omitted in their presentation of their case things

that they might better have presented. It is claimed this testimony is particularly forceful as refuting the testimony of Mr. Vose, a consulting engineer who testified for the plaintiff. Two days before the trial closed, Mr. Vose testified as to the lack of bond between the waterproofing and the wall; that the waterproofing properly applied would have furnished this bond; and that the lack of the bond caused the tiling to buckle. The lack of bond also appeared from the testimony of the first witness who testified for the plaintiff, four days before the close of the trial, and he gave the want of proper bond between the waterproofing and the wall as the cause of the buckling. We cannot say that the refusal of the trial court to open the case and receive the proffered testimony was erroneous.

(b) A witness of the appellant who had had thirty-six years' experience in doing tiling work had testified that he had never installed any tiling "like the general system involved in this case," and had "never seen any specifications or plans that called for that type of installation on wall tile." He was asked: "Q. What can you say as to the practicability of such installation?" Objection was made on the ground of lack of qualification of the witness and sustained. Counsel for the appellant have not favored us with their reasons for thinking this was error, nor those of respondent for thinking it was right. No further effort was made by the appellant to qualify the witness. The ruling was evidently based on the fact that the witness had not had any experience whatever with that kind of installation and therefore knew nothing about it, or at least had no special knowledge respecting it that entitled him to testify as an expert. We cannot say that under the circumstances it was error to sustain the objection.

(c) A witness was asked as to whether the method of installation of the tiling used in the showers was the usual and customary method of installation, and on objection was per-

mitted to answer. His answer was: "Well from hearing, knowing what I do of asphalt and seeing the material I would say it was hardly practical." This answer was stricken as not responsive, and it manifestly was not, and the witness then answered the question propounded "No." He was then asked directly whether the method of installation of the tiling was "a practical or efficient method" and objection was made and sustained on the ground that he was not qualified. Attempt was then made to qualify him. It appeared that he had never installed tiling on vertical walls in the method used in the showers and had never seen any specifications for such installation on shower stalls or vertical walls. The question was not repeated. We perceive no error here.

(d) A witness of thirty years' experience in tile construction was put on the stand by the appellant in surrebuttal and asked whether he had ever installed tile against a waterproofing membrane saturated with asphalt. Questions followed whether he ever knew of any such installation; whether he would consider the installation used in the showers adequate and sufficient. Objections to these were made and sustained on the ground that they were improper surrebuttal, as they were. Counsel then asked to be permitted to put in the testimony proffered as a part of his case. This was refused. No attempt was made to show that the witness had ever had any experience with the method of installation involved. We perceive no error in the rejection of the testimony.

(9) The evidence received covered by this assignment is considered under (a) and (b).

(a) A representative of the Minwax Company, after he had said the specifications used in the shower baths involved were those laid down by the company, was asked as to the jobs in which "Minwax" waterproofing was used according to the specifications prescribed by the company. After he had named McAlpin Hotel and Waldorf-Astoria, counsel for the defendant said: "I don't think that is proper. It might neces-

sitate our making investigation in cities far off." Counsel for plaintiff said there was nothing to prevent making such investigations as he wished. The court stated he thought it competent to show the extent of the use of the product. The witness then named Pennsylvania Hotel, Federal Reserve Bank, Governor Clinton Hotel, and Racket and Tennis Club of New York. The court then said: "I suppose your inquiry was particularly in regard to shower stalls," and the plaintiff's counsel said it was. The witness made no statement as to his answers being so limited. Appellant's counsel made no formal objection to the question above stated. On cross-examination the witness stated, as to his testimony as to general use of the material in New York, that he knew nothing about that except as reported to him by the company. Appellant's counsel made no motion to strike out the testimony as to buildings in which "Minwax" had been used either after or before the statement of the witness last above stated. In view of the fact that the case was tried to the court and the trial judge was entirely competent to evaluate the testimony under the circumstances in which it was given, we are of opinion that there was no prejudicial error in the receipt of the testimony under consideration.

(b) The objection here seems to be that by his remarks the trial judge indicated that he considered it beside the case that a witness on the stand considered it a better construction to lay the tiling in cement plaster applied directly to the wall than to use waterproofing. He stated that: "The question is whether this [method of construction] is one that is ordinarily recognized by architects and engineers as an acceptable one." We perceive no error in this view. The questions were, Was the workmanship defective, and, if it was, did the defective workmanship cause the tiling to buckle within two years? It may be said in passing that this witness gave it as his opinion that the construction used was inadequate, as did the other witnesses, from which it may be

inferred that had the witnesses referred to under (8) (b) and (c) qualified themselves they would have been permitted to answer the question to which objection was sustained.

(11) The point made under this head seems to be that while no one of the errors of the court claimed by the appellant which are above treated in detail may have been of such magnitude as to warrant a new trial, they show in the aggregate that it did not have a fair trial. In view of our rulings upon the several assignments of error it is manifest that if our rulings are correct the defendant's trial was not unfair to the appellant.

(12) This assignment is based upon sec. 289.16, Stats., which provides that every contract for the performance of any work or labor or furnishing of any material on or for a public building shall contain a provision for the payment of all labor and material by the contractor, and shall be accompanied by a bond conditioned for performance of the contract and the payment of all claims for such material and labor. Sub. (2) of the section provides that "any party in interest may, within one year after the completion and acceptance of said contract, maintain an action in his own name against such contractor and the sureties upon such bond . . . for . . . any damages he may have sustained by reason of the failure . . . of said contractor to comply with the aforesaid terms and conditions of said contract." The bond required by this section is for the benefit of the laborers and materialmen who perform labor or furnish material on or for the building. *Cowin & Co., Inc., v. Merrill,* 202 Wis. 614, 233 N. W. 561; *Wisconsin Brick Co. v. National Surety Co.* 164 Wis. 585, 160 N. W. 1044. It is also for the benefit of the municipality to secure the construction of the building according to the contract. But the provision for bringing suit within one year is applicable to the laborers and materialmen and subcontractors only. It does not apply to the municipality. This is obvious from the guaranty provision of

this contract and like provisions commonly incorporated in contracts for public work. The bond is conditioned that H. Neidner & Company shall perform all the terms and conditions of its contract. The plans and specifications are a part of the contract. One of these conditions is that the tiling should stand for two years from the time of final payment. It did not so stand. Therefore, the county had a cause of action on its guaranty. Application of sec. 289.16 (2), Stats., to the county would make impossible a suit on the bond and utterly defeat the purpose of the bond so far as benefit to the municipality is concerned.

(13) The proposition here contended for is that the guaranty involved is par. (a) of the specifications, which provides that the contractor "shall maintain his work in good condition with respect to . . . cracks, defects due to faulty workmanship or materials, etc., for one year from time of final payment." This provision is under the heading "General Conditions, Maintenance of Work and Guarantee," and is a general provision applying to the whole building. Par. (b) refers especially to the tiling and is headed: "Tile Work Specifications. Guarantee. All work included in this contract shall be guaranteed in accordance with the contract requirements for a period of two years after final payment." It is breach of this provision that the suit is based upon. The surety company contends that there is such discrepancy between these two provisions that they are meaningless. But obviously par. (a) is a general provision applying to the whole building and to work done thereon which is not covered by a special guaranty. As the tiling was covered by a special two-year guaranty, and buckled and cracked within two years, H. Neidner & Company is liable under its special guaranty and the surety company is liable on its bond.

(15) It is contended that the defective work of the appellant in applying the waterproofing was waived by the plaintiff because no objection was made to it while the work was

progressing. *Laycock v. Moon,* 97 Wis. 59, 72 N. W. 372, and *Ashland Lime, Salt & Cement Co. v. Shores,* 105 Wis. 122, 81 N. W. 136, are cited in support of this contention.

The waterproofing was applied in shower stalls scarcely three feet wide at the entrance and so small as not to accommodate an inspector inside while the work was being done. After it was applied it was not noticeable whether it adhered to the wall properly. The concrete plaster had to be applied and the tiling laid thereon shortly after the waterproofing was applied to the shower walls. After it was applied it was not noticeable whether a sufficient bond existed between it and the wall, and no possible means existed of determining this after the cement plastering had been applied and the tiling placed. As the trial judge stated in his opinion: "Obviously he [the inspector] was not expected to observe in detail the work of every laborer on the job or even of every foreman. . . . It was concealed work of such a nature that it could not be inspected as the work progressed, by the most painstaking inspector." This of itself would be sufficient to distinguish the *Laycock* and *Ashland Lime, Salt & Cement Cases,* above cited. They are also distinguishable on the ground that the contract in the instant case contains no provision for inspection as the work progresses, as did those involved in those cases, and expressly provides that the architect's certificate of performance of work or payment thereunder should not be deemed an acceptance of work or material not in accordance with the contract or a waiver of any rights which the owner would otherwise have under the contract. It was held in *Keachie v. Starkweather D. Dist.* 168 Wis. 298, 170 N. W. 236, that it is the duty of a contractor to make his work comply with the contract and specifications unless he is relieved from that duty by the terms of the contract itself, and that that duty exists in the absence of a provision for inspection or other exempting provision. And where work is guaranteed for a specified period, as was the

tiling for two years, acceptance of the work cannot from the nature of the provision waive the guaranty. 9 C. J. p. 798.

This we believe sufficiently covers all points raised on the appeal. It follows that the judgment should be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.

The following opinion was filed February 4, 1936:

FOWLER, J. (*on motion for rehearing*). There was submitted in connection with a motion for rehearing a motion to vacate our decision and mandate and order a new trial upon the record and affidavits filed in this court in support of the motion. The motion other than for rehearing was based upon sec. 251.09, Stats., relating to discretionary reversal, and sec. 269.46, Stats., relating to vacation of a judgment within one year after notice thereof upon the ground of mistake or excusable neglect.

The motion for relief under sec. 269.46, Stats., cannot be granted by this court. It must be applied for in the trial court. It cannot be granted by the trial court after affirmance by this court, although a motion for a new trial on the ground of newly-discovered evidence may be. *Belt Line Realty Co. v. Dick,* 202 Wis. 608, 233 N. W. 762.

As to discretionary reversal under sec. 251.09, Stats., this court may reverse if it appears "from the record" that justice has probably miscarried. The "record" referred to in the statute is the record returned from the court below. We cannot consider the affidavits.

The question of exercising our discretionary power to order a new trial under this statute while raised was not stressed in the briefs, and was not passed upon in our consideration of the case in the first instance. We are earnestly urged by the movants to reconsider the point. We were fully aware at the time of filing our opinion that the case was exceedingly close and entertained suspicion approaching

doubt that the method of waterproofing provided for in the specifications was defective for want of sufficient adhesive force in the asphalt, if properly applied, to bind the tiling and concrete between that and the waterproofing to the shower walls, and that this want of a sufficient bond was the cause of the bulging and cracking of the tiling complained of. However, the evidence then seemed sufficient to support the findings of the trial court, and we did not reach the point of considering whether it was "probable that justice had miscarried," and whether a new trial should be ordered upon that ground. Upon further consideration, it seems to us probable that there has been a miscarriage of justice between the Schranz Company and H. Neidner & Company, and for that reason we reverse the judgment and remand the case for retrial of the issues between them. This does not affect the judgment as between the county and H. Neidner & Company and its bondsman, as the ground of plaintiff's recovery against them was breach of the company's guaranty that the walls would stand for two years. The procedure adopted in *Scharine v. Huebsch,* 203 Wis. 261, 234 N. W. 358, and since followed in several cases, will be followed herein.

The briefs upon the motion for rehearing have treated the question of a new trial in the interest of justice as fully as the parties wished to present it, and we see no occasion for further argument or briefs. The motion for a rehearing is therefore denied, but the original mandate is withdrawn, and a mandate in accordance with the above will be substituted.

As a new trial is ordered, we will again briefly discuss a claim of error made by appellants respecting rejection of evidence considered in the original opinion, and stressed on the motion for rehearing.

It is claimed that the trial court erred, and this court erroneously sustained it, in ruling that tile men of experience could not testify whether the method used was the usual and customary method of waterproofing shower walls. It clearly appears that the witnesses whose testimony was rejected

knew nothing about whether the method was customary out-side of Milwaukee and vicinity, and it is without dispute that the method involved had never been used there except in one other building besides the one in suit.

More nearly approaching error is a point not particularly suggested in the briefs or motion papers. It is the refusal of the trial court to permit an experienced tiler to answer a question put to him whether the method used was practical. But the practicability of the method depended on the ad-hesiveness of asphalt. The witness did not show that he knew anything about asphalt and did not claim that he had ever used it. (Par. (9), Opinion.) Another witness in answer to the question whether the method was usual and customary first answered: "Well, from hearing, and know-ing what I do of asphalt and seeing the material I would say it was hardly practical." This was stricken as not responsive. He then answered the question "No." The question was then put, Was the method practical and efficient? and on objection was not permitted to answer because not qualified. Attempt was then made to qualify him, and this failed. In the qualifying questions put, nothing was asked about his knowledge of asphalt. He had never used it in vertical walls. He was a tile man, not a roofer or waterproofer, and the two are distinct businesses. The defense was not precluded from going into the question of the practicability or sufficiency of the construction. Several witnesses gave it as their opinion that it was not good; that the bond provided by the asphalt was insufficient to support the walls.

*By the Court.*—The original mandate is vacated. The judgment of the circuit court as between the county of Mil-waukee and H. Neidner & Company and its bondsman is affirmed. The judgment as between H. Neidner & Company and the interpleaded Schranz Company is reversed, and the case is remanded for a new trial of the issues between them. No costs are allowed on the motion for rehearing. The plaintiff will have costs against the Columbia Casualty Com-

pany, but not against H. Neidner & Company, which did not appeal. The Schranz Company will have costs against H. Neidner & Company.

The following memorandum was filed March 31, 1936:

PER CURIAM. The defendant H. Neidner & Company and the Columbia Casualty Company have filed motions to vacate the mandate herein vacating a former mandate entered upon denial of a motion for rehearing made by the Schranz Company and to substitute therefor a different mandate. The plaintiff has moved to strike these motions.

The original mandate affirmed a judgment in favor of the plaintiff against H. Neidner & Company and its surety, the Columbia Casualty Company, and awarding the latter judgment over against the Schranz Company. The second mandate affirmed the judgment as against H. Neidner & Company and its surety, but granted a new trial of the issues as between the latter and the Schranz Company. Neither H. Neidner & Company nor the surety company filed a motion for rehearing upon the original decision of the case.

The original decision and mandate were filed on November 5, 1935. On February 4, 1936, the Schranz Company's motion for rehearing was denied and the second mandate filed. Sec. 274.35 (2), Stats., provides that unless a motion for rehearing is made the record shall be remitted to the trial court within sixty days after the decision of the case by this court and "in case such motion for a rehearing is denied the papers shall be transmitted within twenty days after such denial."

In *Tomberlin v. Chicago, St. P., M. & O. R. Co.* 208 Wis. 30, 37, 38, 238 N. W. 287, 242 N. W. 677, 243 N. W. 208, it was held, advisedly and after full consideration and deliberation, that after the motion of one party for a rehearing has been denied a motion for a rehearing by the other party will not be entertained, and that, under the statute above cited, this court loses jurisdiction twenty days after a motion

for a rehearing is denied. The motions of the defendants for vacation of the second mandate and the filing of a different mandate are in effect motions for rehearing made upon denial of a motion for rehearing. Moreover, the point raised by the motions was covered by the original decision of this court. It is, in effect, no more than a motion for a rehearing upon that decision, and the time limit for filing the latter is twenty days from the filing of the decision. For these reasons, and for the further reason that the court lost jurisdiction of the case under the statute cited twenty days after the denial of the motion of the Schranz Company for a rehearing, the motion of the plaintiff to strike the said motions of the defendant is granted with $10 costs of motion.