KNIESS and wife, Appellants, vs. AMERICAN SURETY COMPANY OF NEW YORK and another, Respondents.

*November 5—December 2, 1941.*

For the appellants there were briefs by *Genrich & Genrich*, attorneys, and *Herbert L. Terwilliger, James A. Fitzpatrick,* and *William J. Hoffmann* of counsel, all of Wausau, and oral argument by *F. W. Genrich, Jr.*

For the respondents there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Edward M. Duquaine.*

WICKHEM, J. No particular significance appears to attach to the fact that this is an appeal from two separate orders. It is assumed by the parties that there are now before the court on the basis of a complaint and answer enough facts upon which to determine the question of law argued upon this appeal; hence the facts will merely be stated without reference to the pleadings.

During the years 1939 and 1940 Jefferson Construction Company as principal contractor built an interceptor sewer in the city of Wausau. The contract price was approximately $201,000. The contract required that before work was commenced the contractor obtain compensation insurance, public-liability, and property-damage insurance. Riders or separate policies covering the special hazards arising from the operation of trucks, the undermining of adjacent structures or blasting operations were also required. The contract was specific as to the amount of coverage for public-liability and property-damage insurance. While blasting rock the contractor negligently damaged plaintiffs' property. Plaintiff sued the contractor and recovered judgment in the sum of $3,577.19. This judgment was affirmed upon appeal to this court. The Wisconsin Mutual Insurance Company assumed

defense of the action under its policy, but before paying the judgment got into financial difficulties and is in the hands of the state insurance commissioner for liquidation. Defendants sustained large losses by reason of contributions to the cost of completing the project and the payment of valid claims for labor and materials. The contract of guaranty upon which defendants are sued was given in compliance with sec. 289.16 (1), Stats., which provides in substance that all contracts for the performance of labor or furnishing of materials involving $100 or more and having to do with public work of any kind shall contain a provision for the payment by the contractor of all claims for labor performed and materials furnished, including fuel, lumber, building materials, machinery, vehicles, motor oil, premiums for workmen's compensation insurance, etc. It is further provided that no such contract shall be made unless the contractor shall give a bond, the penalty of which shall not be less than the contract price, *conditioned for the faithful performance of the contract* and payment to each person entitled thereto of all claims for labor performed, materials furnished, etc. There is no doubt upon the record that the bond was furnished to comply with this statutory requirement. The conditions of the bond are *that the principal shall well and truly perform and fulfil all the undertakings, covenants, terms, and conditions of the proposal and agreement, and* that the principal shall promptly make payments to all persons supplying the principal with labor and materials in the prosecution of the work. The bond is no broader than the calls of the statute. To engage that the principal will well and truly perform and fulfil all of the undertakings, covenants, terms, and conditions of the proposal and agreement is nothing more than an agreement that he will faithfully perform his contract, and the detail in which the bond is stated does not in any way enlarge the duties of the principal. The contract executed in this case contains internal evidence that the bond required by it and actually executed was intended simply to be

a compliance with sec. 289.16. Section (1) of the general conditions of the contract, which by the express terms of the contract prevails over and supersedes any other provisions in the contract, provides as follows:

"The contractor shall furnish a surety bond (form attached) in an amount at least equal to 100 per cent of the contract price as security for the faithful performance of this contract and for the payment of all persons performing labor and furnishing materials in connection with this contract."

This is nothing more than the requirement of an ordinary performance bond.

In addition the contract contains the following rules relating to the performance bond:

"1. Exhibit 1 is a performance bond to be used in those cases when an executed contract and bond for 100 per cent of the bid price is submitted with the bid. (See sections 62.15 and 40.54, Wisconsin statutes 1935, which apply to cities and city school boards.) This form must be fully executed when submitted with a bid.

"2. Exhibit 2 is a form of bond to be used in all cases where a certified check, cash or government bond is submitted as a bid guarantee. This form of bond is executed by the successful bidder only after the award of a contract.

"3. Care should be observed to execute bonds fully and properly. Approval by the owner is required. (Section 289.16, Wisconsin statutes 1935.)"

Exhibit 1 which was the bond used in this case contains the following note:

"(Note: This is not a bid bond form. It is for use in those cases where a signed contract and 100% performance bond are submitted with the proposal.)"

Following the signatures is the following note:

"Note: The bond must be approved and the approval date in every case; refer to section 289.16, Wisconsin statutes 1935. The title of the person signing must be indicated."

These notations fortify the conclusion that nothing more than a conventional performance bond was contemplated and executed. Under the decisions in this state the bond given under the terms of sec. 289.16, Stats., has for its statutory beneficiaries: (1) The municipality; (2) laborers; (3) such holders of claims for materials and supplies as are listed in the statute itself. *Milwaukee County v. H. Neidner & Co.* 220 Wis. 185, 263 N. W. 468, 265 N. W. 226, 266 N. W. 238.

In *Kolb v. Hayes,* 194 Wis. 40, 215 N. W. 578, it was held that an abutting property owner having claim for blasting damage against a public contractor is not entitled to a lien under sec. 289.53, Stats., and is not entitled to recover under a performance bond given in satisfaction of sec. 289.16.

The plaintiff's claim can be very simply put: One provision of the contract is to the effect that any damage done by blasting rock shall be immediately settled for by the contractor. Another is that the "contractor and his bonding company shall be responsible for all damages caused by the contractor's operation and save, defend, indemnify, protect and hold harmless the city and its engineers against all manner of claims, demands, liability, damages or any other costs which may accrue in the prosecution of the work." Plaintiff contends that since defendant guaranteed faithful performance of the contract, together with all its undertakings, terms, and conditions, and since one of these covenants by the contractor is to settle for damages by blasting, the bond must be considered to run to the benefit of those who sustain damages by reason of these operations.

We consider this to be contrary to the rule laid down by the decisions cited and to the terms and conditions of the contract itself. The intent of sec. 289.16, Stats., is to make beneficiaries of the performance bond there prescribed only the political subdivision making the contract and those who furnish work, labor, materials, and other items listed in the statute. It is not intended by requiring a guarantee by the

bonding company of faithful performance by the principal to extend the benefit of the bond to persons not specifically mentioned in the section. The reason for this is plain: The penalty of the bond in this case is one hundred per cent of the contract price. As pointed out in *Osgood Co. v. Peterson Construction Co.* 231 Wis. 541, 286 N. W. 54, there is occasion for concern lest a too liberal construction of the section deplete the fund available for the intended statutory beneficiaries. For example, a performance bond guaranteeing a contract involving an expenditure of $5,000 would give little relief to laborers and materialmen if they were compelled to share the fund with the holder of a substantial tort claim.

Coming to the contract and bond it is evident that the latter was not intended for the benefit of tort claimants situated as is plaintiff. Specifically, and with great detail and meticulous care, the contract prescribes that public-liability and property-damage insurance covering tort claims for personal injuries, accidental death, and property damage shall be secured and maintained during the life of the contract. It is further provided in the contract that there shall either be riders or special policies covering public-liability and property-damage insurance in respect of special risks involved in the operation of trucks, undermining adjacent structures, and blasting operations. The precise amount in which public liability and property damage respectively shall be obtained is set out. It is evident to us that these provisions were made for the very reason that the performance bond did not and was not intended to run to the benefit of persons who sustained the type of injury or harm for which the special insurance was required.

In addition to the provisions relating to blasting, which are relied on by plaintiffs as establishing defendants' liability, are the following general conditions:

"The surety company for the contractor shall indemnify and hold harmless the owner against any claims, demands,

liabilities, and damages caused by the hauling of materials, equipment, installation of materials and equipment, movement of dirt and materials of any kind and the erection of any structure included in this contract."

"The contractor shall pay all losses, damages or claims that the owner may be liable for and keep the owner safe, harmless in all things, from any accidents, casualties, damages, losses or claims which may happen or arise by reason of any failure, neglect or refusal on his part or that of his agents to prevent the same or to comply with any ordinances of the city in protecting the public."

None of these provisions support plaintiffs' position. Their evident intent is to make certain that the surety shall undertake to save the city harmless from liability for damages in the described situations and thus to eliminate any question as to what is meant by a guarantee of faithful performance. The provisions do not support a conclusion that the promise of the surety is for the benefit of tort claimants. They simply make certain that the city shall have the benefit of it in the described cases. The only Wisconsin case cited by plaintiffs which appears to call for extended analysis is *Employers Mut. L. Ins. Co. v. Ferd. H. Grahl C. Co.* 203 Wis. 315, 316, 234 N. W. 326. In that case the performance bond was broader than the statute in that there was a specific engagement to pay and discharge "liabilities for injuries which have been incurred in the said construction under the operation of ch. 102 of the Wisconsin statutes and all acts amendatory thereto." The question there was whether the surety upon the performance bond was liable for premiums for workmen's compensation insurance. This court held that there was no liability because there was no provision either in the statute or bond requiring the surety to pay such premiums. It is intimated, although this was not necessary for the decision, that had no compensation insurance been carried, the owner would be liable for compensation to an injured workman. If this implies that the surety upon the performance bond would

also be liable to the workmen the basis for the conclusion was clearly the special engagement of the surety over and above the statutory requirements to discharge liabilities for injuries sustained in the construction. So far as the question directly involved and disposed of is concerned the case is clearly in line with our conclusion here.

To summarize, the court is of the view:

(1) That this is an ordinary performance bond under sec. 289.16, Stats.

(2) That the bond discloses no intent to assume a liability broader than that contemplated by this section.

(3) That the contract involved in this case contemplates only such a performance bond as sec. 289.16, Stats., requires.

(4) That sec. 289.16, Stats., contemplates as third-party beneficiaries of the bond only those who furnish items listed by the section and that the general guarantee of faithful performance of the contract runs only to the city and not to tort claimants such as plaintiffs who, it is contemplated, will look to the contractor and to the special insurance which he is required to maintain.

*By the Court.*—Order affirmed, and cause remanded with directions for further proceedings according to law.