**TRI-STATE INSURANCE COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 17651.**

United States Court of Appeals
Eighth Circuit.

Jan. 26, 1965.

As Modified Feb. 19, 1965.

Richard A. Williams, of Wright, Lindsey, Jennings Lester & Shults, Little Rock, Ark., made argument for appellant and filed brief.

Richard N. Countiss, Atty., Lands Div., Dept. of Justice, Washington, D. C., made argument for appellee and filed brief with Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis and John J. Schimmenti, Attys., Dept. of Justice, Washington, D. C., Charles M. Conway,

U. S. Atty., and E. A. Riddle, Asst. U. S. Atty., Fort Smith, Ark.

Before VAN OOSTERHOUT and ME-HAFFY, Circuit Judges, and DELE-HANT, District Judge.

MEHAFFY, Circuit Judge.

Appellee, the United States, brought this suit against The Baptist Golden Age Home, Capital Construction Company, Inc., and appellant, Tri-State Insurance Company, the surety of Capital under a construction contract. The injury complained of was damage to United States land sustained when the lateral support thereto was removed by Capital in the course of excavation pursuant to performance of a building contract on adjoining land belonging to defendant Baptist.

The District Court ruled Baptist immune by reason of its charitable crasis, but ruled Capital and Tri-State absolutely liable submitting to the jury only the question of damages. The jury returned a verdict against Capital and Tri-State, jointly and severally, in the sum of $5566.00. Tri-State has appealed, and we are concerned here only with Tri-State's liability under its bond.

Section 1345, Title 28 U.S.C.A., vests federal district courts with original jurisdiction in all such civil actions commenced by the United States Government.

The facts may be briefly stated. On July 15, 1960, Capital entered into a building contract with Baptist, an eleemosynary institution, for construction of an addition to the latter's home for retired members in Hot Springs. On that same date, appellant Tri-State, as surety, executed a performance and indemnity bond whereby appellant and Capital were bound unto Baptist and the mortgage lender in the amount of the building contract.[1]

---

1. The condition of the bond was:
   "(T)hat, if Principal (Capital) shall well and truly perform all the undertakings, covenants, terms, conditions and agreements of said contract on its part, and fully indemnify and save harmless Obligees (Baptist and mortgage lender)

from all cost and damage which they may suffer by reason of failure so to do, and fully reimburse and repay Obligees all outlay and expense which Obligees may incur in making good any such default, and, further, that if Principal shall pay all persons who have contracts di-

The plans and specifications of the architect employed by Baptist required Capital to excavate and level the rear of Baptist's upward sloping property to within six inches of the adjoining land owned and operated as a national park by the United States Government, and to erect a concrete retaining wall eighteen feet high to provide lateral support for the embankment approximately twenty-three feet high created by the excavation.

To allow for the footing of the wall, a space of six feet was left between the wall and the embankment. Although the plans and specifications called for this area ultimately to be filled with soil and rock, the architect supervising the job instructed the contractor not to backfill for twenty-eight days after the concrete had been poured for the retaining wall in order to allow the concrete to cure. The architect and contractor discussed the possibility of shoring the embankment during the interim, but they were unable to determine any practical method due to the height of the embankment and the narrow, intervening corridor behind the wall within which any supporting materials would have had to be placed.

After a period of heavy rainfall and before the concrete had cured, a landslide occurred on December 5, 1960. This caused the national park embankment to slough off, slide into and fill two-thirds of the area behind the wall which was ruptured upon impact.

Subsequently, in August of 1961, the contractor defaulted on the job. Thereupon the appellant assumed completion of the construction, and ultimately the Federal Housing Administration which had insured the work authorized payment of the contract costs.

■ At the outset, we recognize that federal jurisdiction based on 28 U.S.C.A. § 1345 renders inapplicable the rule of Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) which requires adherence to the appropriate substantive law of a particular state in a diversity of citizenship case. National Bank of Eastern Arkansas v. General Mills, Inc., 283 F.2d 574, 576 (8th Cir. 1960).

Appellant submits that the District Court erred in denying its motion for a directed verdict because no cause of action existed in favor of appellee against appellant either on its bond executed for the exclusive protection of Baptist, the mortgage lender, laborers and materialmen or by legislative grace under an independent statutory right.

We have examined the cited authority, as well as the jurisprudence generally, and conclude that a fair interpretation of appellant's liability on the bond as written would limit its coverage to those beneficiaries specifically enumerated and should not be extended to afford protection to such a claimant as appellee who seeks to recover damages from the surety for the tortious injury to its land.

■ In general, a surety is liable to third persons only when his obligation to the principal obligor contains a promise which may be reasonably and clearly interpreted for the claimant's benefit. Employers' Liability Assur. Corp. v. A. W. Johnson Co., 234 Ark. 806, 354 S.W.2d 733 (1962); Restatement, Security § 166, Comment at at 462 (1941); 17 Am.Jur. 2d Contracts, § 304 at 730 (1964).

In City of University City ex rel. and to use of Mackey v. Frank Miceli & Sons Realty & Building Co., 347 S.W.2d 131 (Sup.Ct.Mo.1961), a similar question arose with respect to a surety's liability to landowners not a party to a statutory bond given a contractor to protect a municipality against noncompletion of a contract for the improvement of a subdivision. The contractor defaulted on its contract with the city to pave a drainage

rectly with principal for labor or materials furnished pursuant to the provisions of said Contract, failing which such persons shall have a direct right of action against Principal and Surety under this obligation, subject to Obligees' priority, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

ditch which caused portions of the landowners' lots to wash away. The court held that because the plain terms of the bond indemnified and secured only to the city the actual construction of the improvement, neither the bond nor the contract it secured could be reasonably intended to be construed to protect such third persons as adjoining landowners against either torts or breach of contract. The court also noted that in the absence of specific agreement the bond and ordinances involved were not substitutes for public liability insurance covering the contractor's tort liability to the landowners or other third persons.

A like result was reached in John L. Roper Lumber Co. v. Lawson, 195 N.C. 840, 143 S.E. 847 (1928). In this suit, the surety agreed to indemnify a state highway commission against "any expense incurred through the failure of said contractor to complete the work as specified, and from any damage growing out of the carelessness of said contractor * * *." The state court ruled that the indemnity proviso of the bond for the benefit of the commission plus another obligation therein to pay all persons sums due for material and labor could not be reasonably interpreted to afford a right of action on the bond to an unspecified landowner along the right of way whose timber was negligently burned by the contractor. In confining the plaintiff's remedy to an action against the contractor, the court reasoned that to permit tort claimants to recover for injuries to property or person not only would reduce the amount of the bond available to laborers and materialmen contrary to the object of its statutory requirement but also would give them an action on the bond not contemplated by the clear language of the instrument.

And under a similar bond, the Ninth Circuit denied recovery to a motorist who was injured upon running into a culvert along a highway under construction as a result of the contractor's negligence in failing to properly maintain warning signals under his contract. Finding that neither the bond nor the contract contained a provision for payment by the contractor or surety for any damage suffered by such member of the public, the court held in National Surety Co. of New York v. Ulmen, 68 F.2d 330, 336 (9th Cir. 1933), cert. denied 292 U.S. 624, 54 S.Ct. 629, 78 L.Ed. 1479 (1934):

> "[A] third person who is a stranger to a contract or a bond thereunder, cannot recover from the surety even when the contract and bond, as here, contain some reference to him or to the class to which he belongs, unless there is a specific promise to *pay* such third person or such class, contained in the contract and bond. The mere statement of a *duty* to be discharged by the contractor, which may incidentally benefit a third party or class to which the latter belongs, without more, does not make the surety liable to such third person for the contractor's failure to discharge that duty."

See also Kniess v. American Surety Co. of N. Y., 239 Wis. 261, 300 N.W. 913 (1941); United States Fidelity & Guaranty Co. v. Eubanks, 126 Tex. 405, 87 S.W.2d 248 (1935).

The fact that these decisions involved bonds required by statute does not alter their authority for the well established proposition that any liability of a surety to a third person must be measured by a reasonable interpretation of its obligation under the terms of the bond.

Appellee's authorities in support of its action against the surety are inapposite. In every instance, the bond and contract sued upon explicitly covered in unambiguous language the claimant's entitlement to recovery.

The bond given by appellant insured to Baptist and the mortgage lender the performance of Capital's building contract and all cost and damage suffered by these obligees from a breach thereof. It also gave a direct right of action on the bond to any laborer or materialman for claims arising under the contract. The bond does not specify that its coverage

is to operate as an all risks policy of public liability insurance for the benefit of tort claimants such as appellee.

■ Even if the seemingly broad language obligating appellant to indemnify the obligees for all cost and damage incurred as a result of the contractor's failure to fully perform its contract is taken as impliedly for the benefit of appellee, a recovery would still be conditioned upon a showing that the building contract was breached. Here, the architect acting as agent for Baptist specifically instructed the contractor not to backfill until after the time the damage complained of occurred. While the appellee's right to property damages caused by the removal of the lateral support may be absolute as against the adjoining landowner under the law of Arkansas and other jurisdictions as well, this is not to say that the surety's obligation is converted to one of absolute liability beyond the terms of its bond which guarantees only performance as agreed upon by the contractor and the owner-obligee.

Thus, assuming arguendo that appellee is a third party beneficiary under the bond, it can only champion in its action against the surety those derivative rights under the contract capable of being asserted by Baptist, the principal obligee. The contractor fully complied with the instructions of the architect with respect to the procedure for back filling. Therefore, it does not follow that the damage to appellee's land was the result of a breach of the building contract. Consequently, this acceptable performance prevents a right of action against the surety on the bond for breach of contract on behalf of Baptist for the benefit of appellee.

■ Appellee also urges that the Arkansas Direct Action Statute [Ark.Stat. Ann. § 66–3240 (1947)], which authorizes direct suit against the liability insurer of a charity otherwise immune from tort liability, permits the instant action against the appellant on its bond of indemnity to save Baptist harmless from all cost and damage. However, appellee again stands in the shoes of the insured vis-a-vis recovery against the indemnity insurer. And since we have previously concluded that the insurance bond affords no coverage to the insured in this instance, appellee is vested with no greater substantive right by virtue of the statute relied upon. See Ramsey v. American Automobile Ins. Co., 234 Ark. 1031, 356 S.W.2d 236 (1962).

We do not question the undisputed fact that appellee has suffered damage to its lands as a result of the removal of the lateral support on the adjoining land of Baptist; and the question of the contractor's liability to appellee is not before us. We simply hold that under the prevailing weight of authority appellee has no right of action against the surety on its bond as written.

■ Appellant failed to move for a judgment notwithstanding the verdict in accordance with Fed.R.Civ.P. 50(b) before appealing the District Court's error in overruling its motion for a directed verdict. Following the Supreme Court's decision in Johnson v. New York, N. H. & H. R. R., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952), we are constrained to award a new trial as the maximum relief. Chicago, Rock Island and Pac. R. R. v. Breckenridge, 333 F.2d 990, 996 (8th Cir. 1964); Local 978, United Bro. of Carpenters & Joiners v. Markwell, 305 F.2d 38, 48 (8th Cir. 1962).

Reversed and remanded for a new trial.