**MILWAUKEE METROPOLITAN SEWERAGE DISTRICT, a special purpose Wisconsin municipal, Plaintiff–Appellant,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Maryland corporation, Defendant–Appellee.**

No. 94–1896.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1995.

Decided June 7, 1995.

---

Michael J. McCabe, Robert Crawford (argued), Milwaukee Metropolitan Sewerage Dist., Legal Services, Milwaukee, WI, for Milwaukee Metropolitan Sewerage Dist.

Gerald J. Mayhew, Trebon & Polsky, Douglas J. Carroll (argued), Eric J. Goelz, O'Neill, Schimmel, Quirk & Carroll, Milwaukee, WI, for Fidelity & Deposit Co. of Maryland.

Before CUMMINGS, CUDAHY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

The Milwaukee Metropolitan Sewerage District sued Fidelity and Deposit Co., the surety on a performance bond, seeking to recover for damage caused by the failure of an odor control system. The district court granted summary judgment in favor of Fidelity, concluding that the action was time-barred. We affirm.

## I.

In February of 1984, the Milwaukee Metropolitan Sewerage District (the District) so- licited bids from contractors interested in the installation of odor control systems at the South Shore Wastewater Treatment Plant. On May 17, 1984, the District entered into a contract with Kramer Heating and Manufacturing, Inc. (Kramer). Work commenced shortly thereafter. In connection with this work, Fidelity and Deposit Co. (Fidelity) issued the District a performance bond.

On December 25, 1987, the parties certified the work under the contract as "substantially complete." Kramer completed some additional "punchlist" items in August, 1989. The District began experiencing problems and on September 27, 1991, it determined that Kramer had breached its contract. The District therefore brought suit on the performance bond on March 9, 1992.

The relevant provisions of the parties' contract are General Conditions 42 and 57. They provide in part:

42. PERFORMANCE BOND. The Contractor shall file with the Owner prior to the time of execution of the Contract a Performance Bond ... The bond shall also provide a guarantee against defective workmanship or materials or both, for a period of 1 year after Contract Completion.

57. GUARANTEE. Unless specifically stated otherwise in the Contract Documents, all work provided under this Contract by the Contractor or any of his subcontractors shall be warranted to the Owner as follows:

All work shall be ... guaranteed by the Contractor against all defects in workmanship and material for a period of 1 year following Contract Completion or ... for a period of 1 year following the date of Substantial Completion as established by the Engineer ...

The Owner's rights under this Article shall be in addition to, and not a limitation of, any other rights and remedies available by law.

The district court determined that the suit was time-barred. Specifically, it concluded that the action was governed by a one-year limitations period. This was not because Wisconsin's statute governing public works,

Wis.Stat. § 779.14, provides for a one-year limitation on actions, but because the parties, in the language of the contract and the bond, provided for a one-year guarantee period. In making this determination, the district court relied on *Milwaukee County v. H. Neidner & Co.*, 220 Wis. 185, 263 N.W. 468 (1935), which it believed mandated reliance upon the parties' contract.

The District appeals from the district court's determination, suggesting ultimately that the case should be governed by Wisconsin's general six-year limitations period for contract actions, Wis.Stat. § 893.43.

## II.

Resolution of this case therefore turns on whether the action is governed by a one-year limitations period, or whether Wisconsin's general six-year limitations period for contract actions applies. The district court determined that the relevant date to begin counting for limitations purposes was either December, 1987, the time the work was certified as "substantially complete," or later in August, 1989, when Kramer had completed some additional punchlist items. The District does not dispute the use of either date on appeal. Given the fact that the District did not file this action until March, 1992, over two years after the most recent time period, only application of the six-year limitations period can save the District's case. We hold the six-year period inapplicable and therefore affirm the district court.

State law determines the applicable period of limitations. *See Moser v. Universal Engineering Corp.*, 11 F.3d 720, 724 n. 6 (7th Cir.1993). Fidelity suggests that the present action is governed by Wisconsin's statute regulating public works, Wis.Stat. § 779.14. That statute generally requires contracts "involving $500 or more for the performance of labor or furnishing materials [for] any public improvement or public work" to be bonded. The statute further provides that actions upon these bonds can be maintained "[n]ot later than one year after the completion of work under the contract." *Id.*

Section 779.14, by its terms, would appear to apply in the case before us. The statute clearly sweeps municipalities and special districts within its ambit. In its specification of persons who may approve the bond, for instance, it designates a city's "mayor," a town's "president," a village's "chairman," and the "presiding officer" of "any other public board or body." Wis.Stat. § 779.14(1). In addition, the statute applies to "all contracts with the state" and to "all other contracts involving $500 or more." *Id. See also Kniess v. American Surety Co.*, 239 Wis. 261, 300 N.W. 913 (1941) (describing the municipality as one of the statutory beneficiaries). This language seems to cover the contract here, in which a metropolitan sewerage district sought the construction of odor control systems for a public sewerage facility.

■ The district court found, however, that Section 779.14 *did not* apply. It rested its holding on *Milwaukee County v. H. Neidner & Co.*, 220 Wis. 185, 263 N.W. 468 (1935), a Wisconsin Supreme Court decision interpreting Section 779.14, which it believed mandated looking to the language of the parties' contract for a limitation. While we too are bound by the decisions of a state's highest courts, *see Kutsugeras v. AVCO Corp.*, 973 F.2d 1341, 1346 (7th Cir.1992), we read *Neidner* differently than did the district court.

*Neidner* involved a county's suit for damages resulting from the defective installation of tiling. In it, the Wisconsin Supreme Court declined to apply the one-year limitations provision of Section 779.14. Instead, the court turned to the specific guaranty provision of the parties' contract, which guaranteed the work against defects for a two-year period. The court found, specifically, that one of the conditions of the contract "is that the tiling should stand for two years from the time of final payment." 263 N.W. at 476. In light of this express contractual provision, the court believed that it would be anomalous to apply the statute's one-year provision to defeat the county's cause of action. *Id.*

> Application of section [779.14] to the county would make impossible a suit on the bond and utterly defeat the purpose of the bond so far as benefit to the municipality is concerned.

*Id.* The court therefore declined to dismiss the suit on the basis of Section 779.14's one-year limitations period.

■ Unlike the contract involved in *Neidner*, the express contractual provision in the present case does not necessarily conflict with the one-year limitation of Section 779.14. The District's contract with Kramer explicitly provides for a one-year guarantee period. General Condition 42 requires that the contractor obtain a performance bond which provides "a guarantee against defective workmanship . . . for a period of 1 year after Contract Completion." Appellant's Br.App. 60. Similarly, General Condition 57 states a guarantee "for a period of 1 year following the date of Substantial Completion." Appellant's Br.App. 61. The bond between Kramer and Fidelity—which the District ultimately approved—reflects this one-year period, stating that the surety's obligation is void if the contractor "honor[s] all claims for defective work made within 1 year after Contract Completion." Appellant's Br.App. 36–37.

These clauses demonstrate that the parties intended to guarantee the materials and workmanship on the odor control system for a one-year period of time. This factor does not, of course, settle the question of which statute of limitations applies (Section 779.14's one-year term or the general six-year limitations period for contracts, Wis.Stat.

§ 893.43). But the express contractual one-year guarantee does demonstrate that resort to Section 779.14's one-year limitations period would not *necessarily* destroy rights the parties might otherwise have under the language of this contract or bond.[1] We believe that the true meaning of *Neidner* lies in this factor. *Neidner* holds that resort to Section 779.14 should be limited in favor of explicit contractual guarantees that grant the parties additional rights. Because application of Section 779.14 in this case does not destroy rights upon which the parties have consensually agreed, *Neidner* does not prohibit resort to it. Neither the contract nor the bond confer rights here greater than those limited by Section 779.14. Unlike the district court, we do not rely on the language of the guarantee to limit the District's rights.[2] We do find, however, that this language does not interfere with application of Section 779.14.

We believe the one-year limitations period of Section 779.14 governs the present action. As already stated, the statute clearly sweeps municipalities and special districts within its ambit. The District's claim appears to be barred in light of Section 779.14's statutory language that actions can be maintained "[n]ot later than one year after the completion of work under the contract." The District argues, however, that Wisconsin intended to alter the sweep of Section 779.14 when it enacted Section 669.04.[3] Section 66.904

---

1. We can imagine circumstances involving a one-year contractual guarantee where resort to Section 779.14 *might* result in the destruction of contractual rights that *Neidner* seeks to prevent. If the product guaranteed proved defective on the 364th day after contract completion, for instance, then strict application of Section 779.14's one-year limitations period would prove unjust in light of the parties' express agreement. This is not such a case, however. Here, the contract was certified as "substantially complete" on December 25, 1987. Kramer completed additional punchlist items in August, 1989. The District did not test the sewerage systems until over two years later when it concluded, on September 27, 1991, that they were defective. It then filed suit on March 9, 1992. This filing, occurring well over two years after Kramer had completed the punchlist items, does not permit the District to take advantage of any tension between the contract's one-year guarantee period and Section 779.14's one-year limitations period.

2. At oral argument, the District suggested that language of General Condition 57 stating that it

created rights "in addition to, and not a limitation of, any other rights and remedies available by law" should be used to overcome the use of the contract's one-year guarantee to provide the limitations period. We do not, however, use General Condition 57 to provide the relevant limitations period. Instead, we look to the contractual language in order to distinguish *Neidner*, which we believe only precludes resort to Section 779.14 when the parties have contractually agreed to rights over and above the one-year limitations period. The language to which the District points fails to reveal evidence of such an intention.

3. Fidelity suggests that the District's failure to bring this argument to the district court's attention at an early stage in the proceedings waived the argument for purposes of appeal. The District apparently asserted the argument, however, in opposition to Fidelity's motion for summary judgment; the district court merely failed to expressly rule on the matter. Because this argument was presented to the district court, we do

delineates the contracting powers of municipal sewerage districts. It provides in relevant part that the "commission may require any construction contract and any other contract ... to include a bond...." Wis.Stat. § 66.904. The District contends that Section 66.904, alone, governs its contracting activities. Because Section 66.904 does not contain a specific statute of limitations, the District suggests that Wisconsin's general six-year limitations period for contracts applies to its claim. *See generally* Wis.Stat. § 893.43.

We do not find any evidence in Section 66.904 that Wisconsin intended to repeal either the mandatory bond requirements or the one-year limitations period stated in Section 779.14. Section 66.904 states permissively that a metropolitan sewerage district "may require" a bond for any contract. It is not immediately apparent that, even with this permissive language, the state intended to avoid Section 779.14's demand for a bond on all contracts involving more than $500. *See Strong v. C.I.R., Inc.*, 179 Wis.2d 440, 507 N.W.2d 159, 161–62 (App.Ct.1993) (holding that specific language in Wis.Stat. § 66.293 did not modify the broader language of Section 779.14). Instead, Section 66.904 appears to grant a metropolitan sewerage district the *power* to require a bond for *any* contract that it proposes (not simply those involving amounts greater than $500). This is an additional grant of power that in no way negates the provisions of Section 779.14—particularly because Section 66.904 makes no mention of applicable limitations periods. The permissive language simply accords metropolitan sewerage districts an additional power. Under the rule of statutory interpretation mandating saving constructions, we decline to exempt metropolitan sewerage districts from the requirements of Section 779.14. *See generally Strong*, 507 N.W.2d at 162 ("Statutes relating to the same subject matter should be read together and harmonized if possible."); *State v. Dairyland Power Cooperative*, 52 Wis.2d 45, 187 N.W.2d 878, 882 (1971) (rule that specific controls general applies only where there is irreconcilable conflict between

provisions); *Cabott, Inc. v. Wojcik*, 47 Wis.2d 759, 177 N.W.2d 828, 832 (1970) (statutes must be reconciled if possible).

We believe that Section 779.14 governs the present action and bars the District's claim. Because the language of the relevant contract and bond does not, as applied to these facts, accord greater rights than those contained in Section 779.14, *Neidner* does not mandate disregard of the one-year limitations provision. Neither does the statute governing metropolitan sewerage districts, Section 66.904, convince us that Wisconsin intended to abrogate Section 779.14's provisions. We therefore AFFIRM.

---

not feel that it has been waived. *See Occidental Fire & Cas. Co. v. International Insurance*, 804 F.2d 983, 988 (7th Cir.1986).

